## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. BROOKE BOWES, individually and on behalf of all others similarly situated, | ) |
| | ) |
| | ) |
| Plaintiff, | ) Case No.: _CIV-17-1166-R_ |
| | ) |
| v. | ) CLASS ACTION COMPLAINT |
| | ) |
| 1. AMERICAN EAGLE OUTFITTERS, INC., a Delaware corporation; and | ) |
| | ) JURY TRIAL DEMANDED |
| | ) |
| 2. AEO MANAGEMENT CO., a Delaware corporation | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, BROOKE BOWES, by and through her attorneys, for herself and all others similarly situated (hereinafter Ms. Bowes and the putative Class members are collectively referred to as the "Class"), for this complaint against Defendants AMERICAN EAGLE OUTFITTERS, AEO MANAGEMENT CO., and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or related entities (collectively "AEO" or "Defendants") alleges and states as follows:

### I.    PARTIES

1.    Plaintiff Brooke Bowes is a citizen of Oklahoma, residing in Oklahoma County, Oklahoma.

2.    Defendant American Eagle Outfitters, Inc. is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.  American Eagle Outfitters, Inc. is

doing business in Oklahoma, including in the Western District of Oklahoma, and throughout the United States.

3.     Defendant AEO Management Co. is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.  AEO Management Co. is a subsidiary of defendant American Eagle Outfitters, Inc.  AEO Management is doing business in Oklahoma, including in the Western District of Oklahoma, and throughout the United States.

## II.    <u>VENUE AND JURISDICTION</u>

4.     This Court has subject-matter jurisdiction over Telephone Communication Privacy Act ("TCPA") claims under 28 U.S.C. § 1331 because TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227, et seq.  *See Mims v. Arrow Financial Services, LLC,* 132 S.Ct. 740, 744-53 (2012).  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 based on complete diversity of citizenship of the parties and amount in controversy in excess of $5 million, exclusive of interest, and costs.

5.     Defendants conduct substantial business within the State of Oklahoma such that Defendants have more than sufficient contacts within the State of Oklahoma to allow this Court to assert personal jurisdiction.  Additionally, the wrongful acts alleged in this Complaint occurred in Oklahoma.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) as Defendants reside in the District.  Venue is also appropriate in this District pursuant to 28 U.S.C. §

1391(b)(2) because Defendants (i) conduct a substantial business in this District and (ii) a substantial part of the events giving rise to Plaintiff's claims took place within this District.

### III.    NATURE OF THE ACTION

#### Background and Procedural History

7.    Plaintiff, individually and as class representative for all others similarly situated brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq. ("TCPA").

8.    This action asserts claims that were abandoned by the plaintiffs in a previously filed TCPA class action in the United States District Court for the Southern District of New York, captioned *Christina Melito, et al. v. American Eagle Outfitters, Inc., et al.,* No. 1:14-cv.02440-VEC ("*Melito*"), when the settlement class in that case was arbitrarily narrowed to a secret list of 618,301 persons filed under seal in *Melito.*

9.    The complaints *Melito* defined the class therein in terms of whether they had received unconsented spam texts in violation of the TCPA.  The Third Amended Complaint in *Melito,* for example, stated that Plaintiffs bring this case as a class action on behalf of National Classes as defined as follows:

> AEO Spam Text Class:  AEO Spam Text Class: All persons in the United States who: (a) received a text message sent by AEO and/or a third party acting on AEO's behalf; (b) promoting AEO's goods or services; (c) on their cellular telephone line; (d) that were sent using the telephony systems that caused the texts to be sent to Plaintiffs; (e) at any time in the period that begins four years before April 8, 2010 to trial.

> AEO Revocation Class: All persons in the United States who: (a) received a text message sent by AEO and/or a third party acting on AEO's behalf; (b) after unsubscribing from receiving further text messages from AEO; (c) on their cellular

3

telephone line; (d) that were sent using the telephony systems that caused the texts to be sent to Plaintiffs; (e) at any time in the period that begins April 8, 2010 to trial.

*Melito,* DE119:¶85.

10.     Plaintiff Brooke Bowes was a class member within the scope of the Third Amended Complaint, as she received unconsented spam text messages as described in the pleading, despite the fact that she had expressly declined to receive AEO mobile alerts, as detailed below.

11.     When the parties settled the *Melito* action, however, the parties redefined the class, arbitrarily limiting membership to a list provided by the Defendants.  The *Melito* Claims Administrator explained:  "On January 27, 2017, KCC received from Defendant a list of 633,078 records. The records included data points such as: names, addresses, e-mail addresses, and phone numbers. KCC consolidated duplicate phone numbers that had multiple mailing or e-mail addresses and determined that there were 618,301 unique phone numbers (hereafter, the 'Class List')."  *Melito,* DE287:2¶5.

12.     As a result, individuals such as Brooke Bowes, who had received unconsented spam texts in violation of the TCPA, and thus were included in the plaintiff classes defined in the Third Amended Complaint, but who were not included on the Defendants "Class List," were thereby arbitrarily excluded from the *Melito* Settlement Class.

13.     On information and belief, both Brooke Bowes and thousands of persons similarly situated, with valid TCPA claims against AEO, were arbitrarily excluded from the *Melito* Settlement Class.

4

14.     In fact, the *Melito* district court recited that although "over one hundred thousand claim forms were submitted," the Settlement Administrator identified only "38,141 claim forms as valid claims by class members with phone numbers on the Class List." *Melito,* Opinion & Order, DE318:3; *see Melito,* DE287:6¶¶23-24 (Declaration of the *Melito* Claims Administrator: "As of the date of this declaration, 112,699 Claim Forms were submitted.  Of these, 38,141 have been identified as claims submitted by valid class members with phone numbers contained in the Class List, 11,833 were identified as duplicate claims, and 62,665 were determined to be invalid because the claimant or his/her phone number was not included on the Class List.").

15.     According to the *Melito* district court individuals such as Brooke Bowes, who received unconsented spam texts in violation of the TCPA yet were excluded from the Defendants' "Class List," are entitled to seek relief by filing an action such as this.  In the words of the *Melito* district court:  "The protection for anyone who should have been in the Class but was not included on the Class List is iron-clad: they are not in the Class and therefore any claims they have against AEO are not being released. They are free to bring their own lawsuit." *Melito,* DE318:26n.19.

16.   The *Melito* court in granting final approval to a class-wide settlement further found:

 "Because they are not members of the Settlement Class, Ms. Brooke Bowes and Mr. Mierzwicki are not bound by this Final Approval Order And Judgment or by the Settlement Agreement. Thus, to the extent that they believe they have claims against AEO, they are free to assert such claims against AEO. Nothing in this Order is intended to address or evaluate the merits of claims of Ms. Brooke Bowes or Mr. Mierzwicki or AEO's defenses thereto, which also are not waived or released by this Final Approval Order And Judgment or by the Settlement Agreement."

*Order Granting Final Approval of Class Action Settlement Dismissing Class Plaintiffs'*
*Claims and Entering Final Judgment*, U.S.D.C. S.D.N.Y. No. 1:14-cv-02440-VEC,
DE319.

17.     In light of the *Melito* plaintiffs' failure to pursue the claims of Ms. Bowes and others
similarly situated (such as Mr. Mierzwicki), Ms. Bowes now seeks redress in this Court for
claims beyond the scope of the *Melito* settlement.

**The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227**

18.     Enacted in 1991, the TCPA makes it unlawful "to make any call (other than a call
made for emergency purposes or made with the prior express consent of the called party)
using an automatic telephone dialing system or an artificial or prerecorded voice … to any
telephone number assigned to a … cellular telephone service." 47 U.S.C.
§227(b)(1)(A)(iii). The TCPA, in 47 U.S.C. § 227(b)(3), provides a private cause of action
to persons who receive calls in violation of 47 U.S.C. §227(b)(1)(A).

19.     Text messages are deemed to be telephone calls within the meaning of the TCPA.
*See* FCC 15-72, *In re Rules and Regulations Implementing the Telephone Consumer*
*Protection Act of 1991,* CG Docket No. 02-278, WC Docket No. 07-135, at ¶¶107-122
(Federal Communications Commission, rel. July 10, 2015);    *Rules and Regulations*
*Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278,
Report and Order, 18 FCC Rcd 14014, 14115, ¶165 (2003).

20.     Federal Communication Commission ("FCC") regulations "generally establish that
the party on whose behalf a solicitation is made bears ultimate responsibility for any

violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995). The FCC confirmed this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *See In the Matter of the Joint Petition Filed by Dish Network, LLC,* 28 F.C.C. Rcd. 6574, 6574 (2013).

## IV.    FACTUAL ALLEGATIONS

### Defendants

21.    Defendant American Eagle Outfitters, Inc. is a publicly traded company and is a leading global specialty retailer offering high-quality clothing, accessories, and personal care products at affordable prices under its American Eagle Outfitters and Aerie brands. According to its most recent filing with the Securities and Exchange Commission on Form 10-K, American Eagle operates eleven stores in the State of Oklahoma.

22.    Defendant AEO Management Co. is a subsidiary of Defendant American Eagle Outfitters, Inc. and operates Defendant American Eagle Outfitters, Inc.'s website and promotions.

23.    AEO utilizes bulk marketing by advertising through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

24.     AEO makes SMS calls using ATDS equipment and software that has the capacity to dial numbers randomly or sequentially as well as dial numbers from lists to cellular telephones whose owners have not provided prior express consent to receive such calls ("Spam Texts"), including Plaintiff.

**Plaintiff Brooke Bowes**

25.     Beginning in or around December 2015, Ms. Bowes received numerous Spam Texts from, or on behalf of, AEO on her cellular telephone.

26.     The Spam Texts were from short code 324-53 and advertised promotions offered by AEO.  Such advertised promotions included, but were not limited to: "Take up to 25% off our hottest spring styles thru Monday!;" "'Cause we GIVE  A SHIRT. AEO tops: buy 2, get 1 free!;" "Correction! Button downs for $29.99 starts TOMOTTOW (thru Sunday)! Our bad.  See, "shirt" really DOES happen…;" and "Earn bonus points when you get the latest version of the app & check your Rewards status."

27.     The Spam Texts direct the recipient to go to several websites including, but not limited to:    http://dqs.co/7go3ms,    :    http://dqs.co/6gyyer,    http://dqs.co/00d225, http://dqs.co/261w9p,    http://dqs.co/eklmj3,    http://dqs.co/4g6ep,    http://dqs.co/ylxuzi, http://dqs.co/eg9jgr,        http://dqs.co/6w1bvc,        http://dqs.co/5s4he3k,    and http://dqs.co/bchdscy.

28.     Each of the websites is owned, maintained, and/or operated by Defendant AEO.

29.     Ms. Bowes did not provide prior express consent, either written or oral, to receive Spam Texts on her Cellular telephone from, or on behalf of, AEO.  In fact, Ms. Bowes specifically requested that she NOT receive "Mobile Alerts."

30.     On information and belief, AEO is responsible for sending the above-described Spam Texts.

31.     AEO has sent a large number of Spam Texts to persons in Oklahoma, and throughout the United States.

32.     On information and belief, AEO intends to continue to send similar Spam Texts to persons in Oklahoma and throughout the United States.

## V.     CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this lawsuit under Rule 23(a) and Rule(b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and a class of persons who without their consent received AEO spam texts during the Class Period from January 25, 2017, through April 4, 2017.

34.     Excluded from the Class are: (a) federal, state and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendants have a controlling interest, to include, but not limited to, their legal representatives, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; (d) any judicial officer in this lawsuit and/or persons within

the third degree of consanguinity to such officer; and (e) the 618,301 persons included on a secret list filed under in *Melito* who are bound by the class-action judgment in *Melito*.

35.    Upon information and belief, the Class consists of thousands of recipients of Spam Texts who were not included in the judgment in *Melito*.    Accordingly, it would be impracticable to join all Class Members before the Court

36.    There are numerous and substantial questions of law or fact common to all of the members of the Class and which predominate over any individual issues.  Included within the common questions of law or fact are:

  a.    whether AEO and/or their affiliates, agents, and/or other persons or entities acting on AEO's behalf violated 47 U.S.C. § 227(b)(1)(A)(iii) by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiff and members of the Class;

  b.    whether AEO and/or their affiliates, agents, and/or other persons or entities acting on AEO's behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A)(iii) by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiff and members of the Class, thus entitling Plaintiff and members of the Class to treble damages;

  c.    whether AEO and/or their affiliates, agents, and/or other persons or entities acting on AEO's behalf violated 47 U.S.C. § 227(b)(1)(A)(iii) by sending unsolicited commercial Spam Texts to the cellular telephone numbers of

Plaintiff and members of the Class after unsubscribing from receiving such Spam Texts;

d.  whether AEO and/or their affiliates, agents, and/or other persons or entities acting on AEO's behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A)(iii) by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiff and members of the Class after unsubscribing from receiving such Spam Texts, thus entitling Plaintiff and members of the Class to treble damages;

e.  whether AEO and/or their affiliates, agents, and/or other persons or entities acting on AEO's behalf violated 47 C.F.R. § 64.1200(d) by initiating any text call for telemarketing purposes to the cellular telephone numbers of Plaintiff and members of the Class without following procedures for maintaining a list of persons who request not to receive telemarketing Spam Texts;

f.  whether AEO and/or their affiliates, agents, and/or other persons or entities acting on AEO's behalf knowingly and/or willfully violated 47 C.F.R. § 64.1200(d) by failing to follow procedures for maintaining a list of persons who request not to receive telemarketing Spam Texts in the future, pursuant to 47 U.S.C. § 227(c)(5)(A), thus entitling Plaintiff and members of the Class to treble damages;

11

g.  Whether AEO is liable for Spam Texts promoting AEO's products and/or services sent by AEO's affiliates, agents, and/or other persons or entities acting on AEO's behalf;

h.  Whether AEO is liable for Spam Texts promoting AEO's products and/or services sent to persons after those persons unsubscribed from receiving such Spam Texts, whether sent by AEO, AEO's affiliates or agents, and/or other persons or entities acting on AEO's behalf;

i.  Whether AEO is liable for Spam Texts to persons on AEO's internal do-not-call list sent by AEO's affiliates, agents, and/or other persons and entities acting on AEO's behalf; and

j.  Whether AEO and/or their affiliates, agents, and/or other persons or entities acting on AEO's behalf should be enjoined from violating the TCPA in the future.

37.  The claims of the Plaintiff are typical of the claims of Class Members, in that she shares the above-referenced facts and legal claims or questions with Class Members; there is a sufficient relationship between the damage to Plaintiff and Defendants' conduct affecting Class Members, and Plaintiff has no interests adverse to the interests of other Class Members.

38.  Plaintiff will fairly and adequately protect the interests of Class Members and have retained counsel experienced and competent in the prosecution of complex class actions including complex questions that arise in consumer protection litigation.

39.     A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class Members is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.   the claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

b.  absent a Class, the Class Member will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

c.  given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs that Defendants have committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.  when the liability of Defendants has been adjudicated, claims of all Class Members can be administered efficiently and/or determined uniformly by the Court; and

e.  this action presents no difficulty that would impede its management by the court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendants.

40.      Because Plaintiff seeks relief for the entire Class, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

41.      Further, bringing individual claims would overburden the Courts and be an inefficient method of resolving the dispute, which is the center of this litigation. Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of other members of the Class who are not parties to the adjudication and may impair or impede their ability to protect their interests.  As a consequence, class treatment is a superior method for adjudication of the issues in this case.

42.      Defendants have acted on grounds generally applicable to the Classes, thereby sending final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis. Moreover, on information and belief, Plaintiffs allege that the Spam Texts sent by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## VI.    <u>FIRST CAUSE OF ACTION</u>

Violation of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)

43.      Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

44.     Plaintiff brings this claim against Defendants for sending Spam Texts without consent.

45.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiffs and members of the Class.

46.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiffs and members of the Spam Text Classes presumptively are entitled to an award of $500 in damages for each and every Spam Text in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

47.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by sending unsolicited commercial Spam Texts to cellular telephone numbers, in the future.

## VII.   SECOND CAUSE OF ACTION

Knowing and/or Willful Violations of the Telephone Consumer Protection Act,

47 U.S.C. §227(b)(1)(A)

48.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

49.     Plaintiff brings this claim against Defendants for sending Spam Texts without consent.

50.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited commercial Spam Texts to the cellular telephone numbers of Plaintiffs and members of the Class.

51.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and members of the Class are entitled to treble damages of up to $1,500 for each and every Spam Text in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

52.     Plaintiff and members of the Spam Text Classes are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited commercial Spam Texts to cellular telephone numbers, in the future.

## VIII.  THIRD CAUSE OF ACTION

### Violation of 47 C.F.R. § 64.1200(d) & 47 U.S.C. § 227(c)(5)

53.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

54.     Plaintiff brings this claim against Defendants for sending Spam Texts without consent.

55.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of 47 C.F.R. § 64.1200(d), by initiating any Spam Text for telemarketing purposes to Plaintiff and members of the Class, without following procedures for maintaining a list of persons who request not to receive telemarketing Spam Texts ("internal do-not-call list"). This includes Defendant's failure to properly record do-not-call requests, failure to maintain a record of do-not-call requests, and failure to honor do-not-call requests.

56.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of 47 C.F.R. § 64.1200(d), Plaintiff and members of the Class are entitled to an award of $500 in statutory damages for each and every Spam Text in violation of the internal do-not-call list regulation, pursuant to 47 U.S.C. § 227(c)(5)(B).

57.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating 47 C.F.R.§ 64.1200(d) by failing to follow procedures for maintaining a list of persons who request not to receive telemarketing Spam Texts in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## IX.    <u>FOURTH CAUSE OF ACTION</u>

Knowing and/or Willful Violation of 47 C.F.R. § 64.1200(d) &

47 U.S.C. § 227(c)(5)

58.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

59.    Plaintiff brings this claim against Defendants for sending Spam Texts without consent.

60.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of 47 C.F.R. § 64.1200(d), by initiating any Spam Text for telemarketing purposes to Plaintiff and members of the Class, without following procedures for maintaining a list of persons who request not to receive telemarketing Spam Texts ("internal do-not-call list"). This includes Defendant's failure to properly record do-not-call requests, failure to maintain a record of do-not-call requests, and failure to honor do-not-call requests.

61.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's knowing and/or willful violations of 47 C.F.R. § 64.1200(d), Plaintiff and members of the Class are entitled to an award of treble damages of up to $1500 for each and every Spam Text in violation of the internal do-not-call list regulation, pursuant to 47 U.S.C. § 227(c)(5)(B).

62.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities

18

acting on Defendants' behalf from violating 47 C.F.R.§ 64.1200(d) by failing to follow procedures for maintaining a list of persons who request not to receive telemarketing Spam Texts in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the class she seeks to represent, prays for a judgment as follows:

A.    Declaring this action to be a class action property maintained under Federal Rules of Civil Procedure 23(a) and 23(b)(3);

B.    Appointing Plaintiff Brooke Bowes as representative of the Class;

C.    Declaring Defendants and/or their affiliates, agents, and/or related entities' actions complained of herein violated the TCPA;

D.    Awarding to Plaintiff and the Class statutory damages against all defendants, jointly and severally;

E.    Enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.    Awarding to Plaintiff and the Class attorneys' fees and costs, as allowed by law and/or equity;

G.    Leave to amend this Complaint to conform to the evidence presented at trial; and

H.    Ordering such other and further relief as the Court deems necessary just, and proper.

## DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

DATED:  October 30, 2017          Respectfully submitted,

                                    /s/ Daniel V. Carsey

                                    Daniel V. Carsey, OBA No. 21490

                                    Of the firm:

                                    RISCHARD & CARSEY, PLLC
                                    100 Park Avenue, Suite 700
                                    Oklahoma City, OK  73102
                                    (405) 235-2393
                                    (405) 231-2830 - Facsimile
                                    dcarsey@rischardlaw.com

                                    **ATTORNEY FOR PLAINTIFF,
BROOKE BOWES**